**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE**

TRUSTEES OF THE INDIANA    )
STATE COUNCIL OF ROOFERS   )
HEALTH AND WELFARE FUND, *et al.* )
                      )
      Plaintiffs,       )
                      )
    v.             )      Case No. 4:25-cv-18-AZ
                      )
KORELLIS ROOFING, INC.,    )
                      )
      Defendant.      )

## OPINION AND ORDER

This matter is before the Court on Defendant Korellis Roofing, Inc.'s Motion for Discovery Ruling [DE 34], filed on May 15, 2026. Plaintiffs responded to the motion on May 29, 2026 [DE 37], and Defendant filed on a reply on June 5, 2026 [DE 38]. Defendants have challenged the documents listed on Plaintiffs' privilege log. Plaintiffs have withheld certain documents, namely communications between counsel and an auditor, on the ground that they are protected by attorney-client privilege and the attorney work product doctrine. For the reasons discussed, the Court will grant Defendant's motion as to one of the withheld documents but deny it in all other respects.

## Background

This is a dispute between trustees of union-affiliated pension, health and welfare funds and an employer regarding the employer's required contributions to the funds on behalf of union members. Discovery in this case has been underway for

months and appears mostly complete, save for the information at issue in this motion. Plaintiffs have withheld from production email communications involving an auditor named John Kerulis, an employee of non-party Legacy Professionals LLP, who conducted the employer audits that revealed the alleged underpayments at the core of this lawsuit. All of the communications at issue predate the issuance of the auditor's final report, but many discussing preliminary findings regarding the contributions at issue.

As reflected in their privilege log, Plaintiffs have withheld these communications on the grounds that they are protected from disclosure by (1) the attorney-client privilege; (2) the doctrine of attorney work product; or (3) a combination of the two. Defendant challenges these assertions, arguing that the recent deposition testimony of the auditor Kerulis demonstrated that no privilege or work product protection existed over the withheld communications. Kerulis testified that he did not recall any of the communications in detail and that he did not "believe" that the communications could not be shared with Defendant. *See* DE 34 at 3-4 (quoting excerpts of J. Kerulis deposition transcript). That said, any time Defendant's counsel asked Kerulis about the contents of any conversations or emails, counsel for Plaintiffs instructed the witness not to answer on the basis that answering the questions would reveal information protected from disclosure by the attorney-client privilege and attorney work product doctrine. *Id.* at 3.

As discussed below, the Court agrees that nearly all of these documents are not required to be produced by Plaintiffs.

## Discussion

Before addressing the substantive privilege issues, the Court will address Plaintiffs' argument that Defendant's motion should be denied on timeliness grounds. Plaintiffs argue that "if defendant really had a substantial need for any of this information, it would have sought to compel production long before it did." DE 37 at 7. Plaintiffs support this argument by noting their privilege log was served in February 2026, but Defendant's motion was not filed until May 15, 2026, the last day of discovery in this case. *Id.*

Plaintiff's argument fails to persuade. While the Court always encourages parties to promptly try to resolve discovery issues amongst themselves and bring unresolved issues to the Court as soon as possible, the length of time between receipt of the privilege log and filing of the motion (3 months) is not so long as to be evidence of a lack of diligence on Defendant's part. Furthermore, the deposition of Kerulis did not take place until April 28, 2026, or less than three weeks before Defendant's motion was filed. From review of the transcript and the parties' meet and confer efforts, it is clear that this issue only became ripe once Kerulis had been deposed. Therefore, there is nothing untimely about Defendant's motion.

## A.    Substantive Legal Standards Applicable to Defendant's Motion

### 1. Attorney-Client Privilege

The attorney-client privilege prohibits the compelled disclosure of "confidential communications between a client and an attorney for the purpose of obtaining legal advice." *Denius v. Dunlap,* 209 F.3d 944, 952 (7th Cir. 2000). In cases based on federal

question jurisdiction and claims of federal law, the privilege is governed by federal common law. Fed. R. Evid. 501 ("The privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law."); *Memorial Hospital For McHenry County v. Shadur,* 664 F.2d 1058, 1060 (7th Cir. 1981).

Not all communications between an attorney and their client are privileged. After all, "the privilege is in derogation of the search for the truth and, therefore, must be strictly confined." *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir. 2000). The privilege applies "only if [the communications] constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir. 1990) (alteration in original). In other words, the privilege is limited to confidential communications in which the attorney is acting as a legal advisor—as opposed to business or financial advisor, or in some other context. *Burden–Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir. 2003); *In re Walsh*, 623 F.2d 489, 494 (7th Cir.1980) (holding that the lawyer-client relationship by itself "does not create 'a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client.'") (citation omitted). In determining the lawyer's role, courts frequently ask whether the "primary" or "predominant purpose" of the

communication was to render or solicit legal advice. *See, e.g.*, *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 893 (N.D. Ill. 2018).

When the client is not an individual, but an entity such as a corporation or pension fund, attorney-client privilege "protects communications made in confidence by [an entity's] employees to the [entity's] attorney … for the purpose of obtaining legal advice for the [entity]."*Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 610 (N.D. Ill. 2010) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394–99 (1981)). "Furthermore, the privilege extends to factual investigations made by the attorney in order to provide legal advice to the client, and any factual statements made by the employee to the attorney pursuant to such an investigation are privileged." *Id.* (citing *Sandra T.E. v. S. Berwyn Sch. Dist. 100,* 600 F.3d 612, 619-20 (7th Cir. 2009)). The privilege therefore belongs to the client, the entity, and not any particular employee or agent of the entity. *Id.*; *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 268, 277 (N.D. Ill. 2004) ("[T]he privilege does not belong to the individual agents of the corporation seeking the advice; the privilege belongs to the corporation, because the corporation is the client. That is the rule in federal courts.") (citing *CFTC v. Weintraub,* 471 U.S. 343, 349 (1985)).

Furthermore, while as a general matter, knowing and intentional disclosure to a third party surrenders or waives the privilege, *see In re Pebsworth*, 705 F.2d 261, 263 (7th Cir. 1983), that is not always the case. Specifically, where a third party, such as an accountant or auditor, "is acting as an agent of an attorney for the purpose of assisting with the provision of legal advice" the privilege is not broken as they are not

a true third-party but instead an agent of the client. *In re Grand Jury Proceedings,* 220 F.3d at 571 (citing *U.S. v. Arthur Young & Co.,* 465 U.S. 805, 817–19, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984)). But communications or advice from an accountant or auditor about accounting or auditing matters would not ordinarily covered by the attorney-client privilege unless legal advice is involved. *Id.* "The same is true of correspondence that merely notifies someone of scheduling matters, or which updates the recipient. The latter do not seek or disclose legal advice and thus, are not protected by the attorney client privilege." *Towne Place Condo. Ass'n*, 284 F. Supp. 3d 889, 894 (N.D. Ill. 2018) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) and *Loguidice v. McTiernan*, 2016 WL 4487779, at *16 (N.D.N.Y. 2016)). "The same is true of routine communications between the attorneys and the [auditors or accountants] relating to scheduling and other innocuous status updates." *Id.*

As the party asserting attorney-client privilege, Plaintiffs have the burden of establishing all of its essential elements. "To determine if a communication falls within the protection of the attorney-client privilege, we ask: (1) whether "legal advice of any kind [was] sought ... from a professional legal adviser in his capacity as such"; and (2) whether the communication was "relat[ed] to that purpose" and "made in confidence ... by the client." *Sandra T.E.*, 600 F.3d at 618 (quoting *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997)) (alterations in original). Whether the privilege exists is a fact intensive inquiry, *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000).

### 2. Attorney Work Product

"The attorney work product privilege establishes a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Towne Place Condo Assoc.*, 284 F. Supp. 3d at 897. "It protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Id.* (citing *Sandra T.E v. South Berwyn School Dist. 100,* 600 F.3d 612, 618 (7th Cir. 2010)). Protection of attorney work product is a cornerstone of the adversarial system and predicated on the idea that an opposing party "shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy, or ... invite the [trier of fact] to treat candid internal assessments of a party's legal vulnerabilities as admissions of guilt." *Menasha Corp. v. U.S. Dept. of Justice*, 707 F.3d 846, 847 (7th Cir. 2013). Attorney work product consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ.P. 26(b)(3)(B). Therefore, such documents need not be communications between an attorney and their client to be protected. What matters is the content and if covered by the attorney work product doctrine, these materials "are out of bounds...." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006).

The doctrine is codified in the Federal Rules of Civil Procedure and protects documents prepared by attorneys in anticipation of litigation for the purposes of analyzing and preparing a client's case. Fed. R. Civ. Pro. 26(b)(3)(A). The protection afforded by the doctrine can be overcome if the party requesting the documents shows

7

that it has "'substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means,' the court may order disclosure." *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 611 (N.D. Ill. 2010) (quoting *Sandra T.E.,* 600 F.3d at 618). "But the mental impressions, conclusions, opinions, or legal theories of an attorney about the litigation are to be protected." *Id.* (citing Fed. R. Civ. Pro. 26(b)(3)(B)).

In determining whether a document is prepared "in anticipation of litigation," [t]here must be a concrete dispute between parties; the abstract possibility of a hypothetical lawsuit; the 'general possibility of litigation' is not enough." *Towne Place Condo. Ass'n*, 284 F. Supp. 3d at 898. Courts look to whether, at the time the document was prepared, there was "an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Id.* (quoting *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2nd Cir. 1987)). A party must do more than show that litigation is inevitable, it must show some fact which demonstrates there was "concreteness" in the belief "even though a formal suit has not yet been filed." *Id.* at 899. Thus, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by' the doctrine and Fed. R. Civ. P. 26." *Id.* (quoting *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29–30 (1st Cir. 2009).

Finally, unlike with the attorney-client privilege, there is no presumption that disclosure to a third party automatically waives work-product protection.

8

*Westinghouse Elec. Corp. v. Repub. of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). That is because the purpose of the doctrine is to protect work product from an adversary. Instead, waiver occurs "when the protected communications are disclosed in a manner that "'substantially increase[s] the opportunity for potential adversaries to obtain the information.'" *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1025 (7th Cir. 2012).

**B.     Whether Attorney-Client Privilege or Attorney Work Product Protects the Documents Withheld by Plaintiffs**.

With the above legal standards and principles in mind, the Court will now analyze each of the email chains on Plaintiffs' privilege log which Defendant has challenged as improperly withheld.

### 1.  Email Chain No 1.

The first email chain in question dates from August 22, 2023 to September 5, 2023. While this email involves attorneys and the auditor Kerulis, Plaintiffs have asserted the attorney-client privilege over this document but concede it is not protected by attorney work product. *See* DE 34-1 (Plaintiffs' privilege log). This makes sense as the emails in question relate to scheduling audits and deciding which unions, pensions funds, and employers would be involved. There is not indication of any anticipation of litigation. Furthermore, no legal advice is sought or given within the body of the emails. Again, the emails relate to scheduling employer auditors and what funds and/or employers would be included. Those are facts, which were presumably revealed and shared with Korellis as part of the audit report. Either way, there is no

legal advice sought, given or being discussed despite the fact a lawyer is involved. Plaintiffs argue that the "the emails were exchanged in connection with the provision of legal services—specifically, the legal representing of the plaintiff-funds, as it related to the payroll audit of defendant." DE 37 at 2-3. This applies "in connection with the provision of legal services" too broadly and effectively makes any communication with a lawyer protected by the privilege. That is not the rule. *In re Grand Jury Proceedings,* 220 F.3d at 571.

Accordingly, Plaintiffs will be required to produce this email chain, as it is not protected by the attorney-client privilege.

### 2. Email No. 2

This email is from attorney Robert Bohrer to Plaintiffs' counsel and the auditor dated July 25, 2025. Plaintiffs have asserted both attorney-client privilege and attorney work product over the document. However, there is no indication that litigation was reasonably anticipated at this point, well before the audit took place, so it is not clear how the attorney work product doctrine could apply. That said, the contents of the email are clearly legal advice amongst attorneys and the auditor who was Plaintiff's agent. It involves interpretation of legal documents. It is thus protected by the attorney-client privilege and need not be produced.

### 3. Email Chains Nos. 3 - 8

The remaining withheld emails date from February – April 2024, and relate to the ongoing audits, preliminary audit findings, and what is clearly a brewing dispute between an employer participant in the relevant pension funds as to what payments

need to be made on behalf of union members. Plaintiffs have asserted attorney-client privilege and attorney work product protection over all of these emails. While this lawsuit was not filed until a year later, in March 2025, *see* DE 1, the filing of litigation is by no means a perquisite to attorney work product attaching. The question is whether litigation was reasonably anticipated at the time, not whether litigation was already occurring or absolute. *Towne Place Condo. Ass'n*, 284 F. Supp. 3d at 898. Thus, for Email Nos. 3 – 8, the Court finds each to have been created in reasonably anticipation of litigation. A review of these documents demonstrates that each contain the mental impressions and legal theories of counsel as it relates to the preliminary audit findings. Furthermore, there is nothing to indicate that these materials were widely shared in a manner which would make them likely to have fallen into the hands of the opposing side, so there is no waiver of work product protection. *See Westinghouse Elec. Corp.*, 951 F.2d at 1428; *Appleton Papers, Inc.*, 702 F.3d at 1025. Therefore, these documents do not need to be produced.

Because the Court finds these communications fall within the scope of protection for attorney work product and do not need to be produced, it will not analyze whether they are also protected by attorney-client privilege.

**C.    Defendant's Argument Regarding Kerulis's Status as a "Hybrid Witness."**

The final issue to address is Defendant's argument that Plaintiffs have waived the protection of attorney-client privilege and attorney work product by designating Kerulis as a "nonreporting expert witness." This argument misses the mark. As explained by another district court:

> [I]t is axiomatic that a non-reporting expert does not have to provide a report and therefore does not have to reveal all of the information he or she considered in forming his or her opinions. Rather, a non-reporting expert need only provide "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26. Therefore, it is not the case that all of the information provided by counsel to a non-reporting expert is provided with the expectation that it will become public. The basis for finding a waiver of privilege and work product protection simply does not apply in the case of a non-reporting expert.

*Advanced Magnesium Alloys Corp. v. Dery*, 2022 WL 16743623, at \*6 (S.D. Ind. Nov. 7, 2022). Defendant's arguments that they need these communications "to effectively reveal the influence that counsel has achieved over the expert's opinions and testimony," DE 38 at 8, are therefore unavailing. Plaintiffs have not designated Kerulis as a testifying (or "reporting") expert witness and therefore do not need to disclose his expert reliance materials that formed the basis of any expert opinion he is giving. The audit results have been provided to Defendant, but that does not mean that Plaintiffs have waived attorney-client privilege or attorney work product protection over every communication with the auditor (who again, was working as an agent of Plaintiffs) that would otherwise be protected from disclosure. Stated differently, Plaintiffs are not withholding any underlying factual documents (such as payroll contribution amounts) which may have informed the auditor's conclusions. There are instead withholding documents which reflect legal advice and the mental impressions of counsel relating to the auditor's findings.

## Conclusion

For the reasons discussed, Defendant Korellis Roofing, Inc.'s Motion for Discovery Ruling [DE 34] is **GRANTED in part** in that Plaintiffs are ORDERED to

produce a copy of Email Chain No. 1 (dated August 22, 2023 - September 5, 2023) to Defendant within one week. Defendant's motion is in all other respects **DENIED**.

The Court will set this matter for a status hearing by separate order to discuss with the parties what if any discovery remains to be completed or if the case is ready for dispositive motions.

So ORDERED this 4th day of August 2026.

/s/ Abizer Zanzi
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT